# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
THOMAS HOHENSTEIN,       *
                         *    No. 19-1222V
         Petitioner,     *
                         *    Special Master Christian J. Moran
v.                       *
                         *    Filed: July 28, 2023
SECRETARY OF HEALTH      *
AND HUMAN SERVICES,      *
                         *
         Respondent.     *
* * * * * * * * * * * * * * * * * * * *

Mark Sadaka, Law Offices of Mark Sadaka Associates, LLC, Englewood, NJ, for petitioner;
Tyler King, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION DENYING ATTORNEY FEES AND COSTS[1]**

Mr. Hohenstein asserted that a November 3, 2016 influenza ("flu") vaccine caused chronic inflammatory demyelinating polyneuropathy ("CIDP"), which was diagnosed nearly a year later. Mr. Hohenstein testified the onset of his symptoms was within about one month of the vaccination. However, this testimony was rejected as inconsistent with two medical records that placed the start of his

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

neurologic problems around May 15, 2017, more than six months after the flu vaccination. After this finding of fact, Mr. Hohenstein dismissed his case.

Although unsuccessful in his claim that the flu vaccine caused his CIDP, Mr. Hohenstein seeks an award of attorney's fees and costs. The Secretary objects, arguing that Mr. Hohenstein did not establish a reasonable basis for his claim.

This case presents a difficult situation. As discussed below, no recent appellate authority has considered the meaning of reasonable basis in this context. Moreover, the Federal Circuit may clarify the scope of reasonable basis in forthcoming opinions based upon pending appeals. But, under the existing precedent, Mr. Hohenstein has not met the reasonable basis standard. Thus, his motion is DENIED.

## I.     **Background**[2]

During an annual physical exam with his primary care doctor, Dr. Tsay, Mr. Hohenstein received a flu vaccine on November 3, 2016. Exhibit 4 at 12-19. During the ensuing seven months, no medical records were created.

The next medical record was created on June 29, 2017. Then, Dr. Tsay memorialized that Mr. Hohenstein "presents with tingling and numbness of fingers and toes for 2 months. no weakness." Exhibit 4 at 6. This history means the tingling and numbness started on April 29, 2017.

Mr. Hohenstein eventually saw a neurologist, Dr. Dover, on August 28, 2017. Dr. Dover's history begins by noting that Mr. Hohenstein "says 3 months ago he developed some numbness in his feet." Exhibit 1 at 6. This history means the numbness began on May 28, 2017.

In litigation, Mr. Hohenstein challenged the accuracy of how these two medical records presented the onset of his weakness. He presented affidavits from his wife, two co-workers, and himself. Exhibits 11-13, 22-23. In their version of events, Mr. Hohenstein was having numbness around Thanksgiving or Christmas 2016.

Dr. Dover ordered testing that led to the diagnosis of CIDP. Exhibit 1 at 2. Mr. Hohenstein sought a second opinion from another neurologist, Justin Kwan, on January 26, 2018. Exhibit 21 at 70. Dr. Kwan is affiliated with Temple University

---

[2] The October 21, 2022 Finding of Fact contains additional details.

Hospital. The history in Dr. Kwan's record states that Mr. Hohenstein was in good health "until December 2016/January 2017." Id. at 70.

Mr. Hohenstein first communicated with the person who became his counsel of record, Mark Sadaka, on July 6, 2018. Represented by Attorney Sadaka, Mr. Hohenstein initiated this case by filing a petition on August 16, 2019. The claim set forth in the petition is that the flu vaccine caused Mr. Hohenstein's CIDP.[3] Mr. Hohenstein did not file any medical records with the petition. He filed on October 21, 2019, the first five exhibits, which included his Social Security Administration Disability file.

The Secretary opposed an award of compensation. One reason was the chronology from Dr. Tsay's and Dr. Dover's records. Resp't's Rep., filed Aug. 20, 2020, at 14. The Secretary also noted a lack of evidence regarding causation. Id.

In a September 9, 2020 status conference, the parties discussed next steps. The plan was to allow Mr. Hohenstein to obtain more evidence showing when he started to have his numbness. Order, issued Sep. 10, 2020.

Mr. Hohenstein submitted additional evidence including his employment records. Exhibits 10 and 14. The additional evidence also included the affidavits mentioned above.

Due to the discrepancy in the evidence, a hearing was held on October 11, 2022. Campbell v. Sec'y of Health & Hum. Servs., 69 Fed. Cl. 775 (2006). Following this hearing, the undersigned found Mr. Hohenstein's weakness began on May 15, 2017. Finding of Fact, issued Oct. 21, 2022.

An onset of May 15, 2017 meant that more than six months (193 days to be precise) lapsed between the vaccination and the start of the weakness. Mr. Hohenstein was offered a chance to obtain the report from an expert. Finding of Fact at 6-7. However, Mr. Hohenstein did not submit a report from an expert and sought the dismissal of his case voluntarily. Hohenstein v. Sec'y of Health & Hum. Servs., No. 19-1222V, 2023 WL 356713, at *1 (Fed. Cl. Spec. Mstr. Jan. 23, 2023).

---

[3] The original petition alleged that Mr. Hohenstein received two doses of the flu vaccine. However, this allegation was changed after the evidence showed Mr. Hohenstein received only a single dose of the flu vaccine. Am. Pet., filed Mar. 10, 2022.

3

Mr. Hohenstein sought his attorney's fees and costs. Pet'r's Mot., filed Feb. 14, 2023. He argued that his case satisfied both good faith and reasonable basis. Id. at 4. The Secretary contested an award of attorney's fees and costs. Resp't's Resp., filed Feb. 28, 2023. Mr. Hohenstein defended his request for fees. Pet'r's Reply, filed March 8, 2023. An oral argument was held on June 20, 2023, making the motion ready for adjudication.

## II.    Standards for Adjudication

Petitioners who have not been awarded compensation (like Mr. Hohenstein here) are eligible for an award of attorneys' fees and costs when "the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1). As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs. Simmons v. Sec'y of Health & Hum. Servs., 875 F.3d 632, 635 (Fed. Cir, 2017). Here, the Secretary has not raised a challenge to Mr. Hohenstein's good faith. Oral Arg. Tr. at 216. Thus, the disputed issue is reasonable basis.

In Cottingham v. Secretary of Health & Human Services, the Federal Circuit stated that the evidentiary burden for meeting the reasonable basis standard "is lower than the preponderant evidence standard." 971 F.3d 1337, 1346 (Fed. Cir. 2020).[4] Something "more than a mere scintilla" might establish the reasonable basis standard. Id. at 1346. Petitioners meet their evidentiary burden with "objective evidence." Id. at 1344. In categorizing medical records as objective evidence, the Federal Circuit stated, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." Id. at 1346. Finally, the Federal Circuit in Cottingham specified that "we make no determination on the weight of the objective evidence in the record or whether that evidence establishes reasonable basis, for these are factual findings for the Special Master and not this court." Id. at 1347.

In its most recent opinion regarding the reasonable basis standard, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence that could support reasonable basis. James-Cornelius v. Sec'y of Health & Hum. Servs., 984 F.3d 1374, 1379-81. The Federal Circuit further clarified that "absence of an express medical opinion on causation is not

---

[4] The Federal Circuit's precedential opinion is referred to as Cottingham VII.

4

necessarily dispositive of whether a claim has reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts." Id. at 1379 (citing Cottingham VII, 971 F.3d at 1346). These two most recent decisions guide the analysis regarding what types of evidence constitute objective evidence of reasonable basis, as originally articulated in Simmons, though the ultimate weighing of such evidence is left up to the special master.

The Court of Federal Claims has explained that in the context of vaccine injury, "causation is defined by the *Althen* prongs" and "[b]y extension, the *Althen* prongs may provide at least some definitional context to causation in a reasonable basis analysis." Cottingham v. Sec'y of Health & Hum. Servs., 159 Fed. Cl. 328, 334-35 (2022), appeal docketed, No. 22-1737 (Fed. Cir. Apr. 28, 2022).[5] Merely pointing to some evidence of a causal relationship between a vaccine and an injury is not necessarily sufficient to establish reasonable basis because evaluating the weight of objective evidence and whether it constitutes reasonable basis is a decision for the special master. Id. at 335 (citing Cottingham VII, 971 F.3d at 1346).

### III. Analysis

The Secretary's opposition rests upon two points. First, the Secretary argues that Mr. Hohenstein's contention regarding the onset of his weakness lacked a reasonable basis. Second, the Secretary maintains that Mr. Hohenstein failed to present sufficient evidence that the flu vaccine caused his CIDP. These points are taken up in turn.

**Onset**

The records from Dr. Tsay and Dr. Dover do not support an onset of symptoms in December 2016. Therefore, according to the Secretary, Mr. Hohenstein's case lacked a reasonable basis. See Resp't's Resp. at 13.

The Secretary's argument is refuted and refuted easily. The Secretary fails to give any meaningful weight to other evidence regarding onset. Dr. Kwan's January 26, 2018 record indicates the onset of weakness was in December 2016 / January 2017. Exhibit 21 at 70-73. No information suggests that Mr. Hohenstein provided this history with an intention to pursue litigation. On its face, Dr. Kwan's record appears to "contain information supplied to … health professionals to

---

[5] This Cottingham opinion is referred to as Cottingham XI.

5

facilitate diagnosis and treatment of [a] medical condition[]." Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). In addition, Mr. Hohenstein presented affidavits also attesting to the onset of his weakness in the last two months of 2016.

The Secretary recognizes that the Federal Circuit directed special masters to consider affidavits containing information within the affiants' personal knowledge. Resp't's Resp. at 11-12, citing James Cornelius, 984 F.3d at 1380-81. Yet, the Secretary presented no written argument regarding the value of the affidavits from Mr. Hohenstein, his wife, and his coworkers. See Resp't's Resp. at 12-13. In oral argument, the Secretary repeated that affidavits should present personal knowledge. Oral Arg. Tr. at 225. However, the Secretary did not contend that Mr. Hohenstein and the other affiants lacked personal knowledge.

With respect to the question of onset, Mr. Hohenstein presented more than a scintilla of evidence that his weakness started within approximately two months of his vaccination. As Mr. Hohenstein contended, his evidence was sufficient to require a hearing. Oral Arg. Tr. at 210-11. Accordingly, the Secretary has failed to establish that the presence of two medical records with histories of onset more than five months after vaccination defeats reasonable basis when other evidence controverts those histories. See Schneider v. Sec'y of Health & Hum. Servs., No. 17-1504V, 2021 WL 6424426, at *10 (Fed. Cl. Spec. Mstr. Dec. 15, 2021) (finding that inconsistencies in medical records did not preclude the reasonable basis for a claim that a vaccine caused an on-Table injury). Thus, the Secretary's second argument, a lack of evidence regarding causation, is discussed next.

## Causation

In opposing a finding of reasonable basis, the Secretary argued "Petitioner did not file more than a scintilla of objective evidence in support of causation." Resp't's Resp. at 12. How causation should be considered in the context of assessing reasonable basis is complicated.

To start, none of Mr. Hohenstein's treating doctors suggested the flu vaccine caused his CIDP. Mr. Hohenstein also did not obtain a report from an expert retained for this litigation. Mr. Hohenstein did not file any medical articles examining a potential causal link between flu vaccines and CIDP. All these points support the Secretary's assertion that Mr. Hohenstein "did not file more than a scintilla of objective evidence in support of causation."

6

Regardless, Mr. Hohenstein does not claim that evidence (as that term is traditionally understood) supports his claim that the flu vaccine can cause and did cause his CIDP. The absence of this argument might be attributable to the lack of any scientific or medical articles in this case. The lack of literature in the record could distinguish Mr. Hohenstein's case from Cottingham.

Mr. Hohenstein's answer to the Secretary's challenge about the lack of evidence on causation is to explain why there is little (or no) evidence. Mr. Hohenstein argues that he could not anticipate that the special master would find the onset was months after the vaccination. See Pet'r's Reply at 5. Mr. Hohenstein implies that if the finding of onset differed, then his evidence would have developed further. See id. at 9 (asserting that the flu vaccine is "well-known to cause CIDP"). At oral argument, Mr. Hohenstein advanced a similar point. Oral Arg. Tr. at 235.

Although Mr. Hohenstein did not cite any cases, special masters have found a flu vaccine caused CIDP. Daily v. Sec'y of Health & Hum. Servs., No. 07-173V, 2011 WL 2174535 (Fed. Cl. Spec. Mstr. May 11, 2011); Glassberg v. Sec'y of Health & Hum. Servs., No. 07-303V, 2009 WL 4641696 (Fed. Cl. Spec. Mstr. Nov. 23, 2009); Goza v. Sec'y of Health & Hum. Servs., No. 07-290V, 2008 WL 6082761, at *5 (Fed. Cl. Spec. Mstr. Aug. 1, 2008) (noting the Secretary did not present an expert to challenge petitioner's expert). Moreover, before Mr. Sadaka submitted Mr. Hohenstein's petition on August 16, 2019, the Secretary stipulated to a payment of compensation to petitioners alleging a flu vaccine caused CIDP in more than 100 cases. Of this group, Mr. Sadaka represented a petitioner in approximately a dozen cases. Each decision on stipulation duly notes that the Secretary denies petitioner's vaccinations caused or aggravated the petitioner's CIDP. Murphy v. Sec'y of Health & Hum. Servs., No. 16-1155V, 2018 WL 2772309 (Fed. Cl. Spec. Mstr. Apr. 26, 2018); Kindell v. Sec'y of Health & Hum. Servs., No. 11-710V, 2012 WL 3133482 (Fed. Cl. Spec. Mstr. July 9, 2012). Despite this caveat, Mr. Sadaka could believe that Mr. Hohenstein was likely to receive compensation.

But the belief or confidence of any attorney about the likelihood of success seems irrelevant to the analysis of reasonable basis. Reasonable basis should be assessed on the "objective" evidence. Simmons, 876 F.3d at 635-36; see also Nova Chems. Corp. v. Dow Chem. Co., 856 F.3d 1012, 1018 (Fed. Cir. 2017) (affirming award of attorneys' fees and stating "the extent of a party's pre-suit investigation or how fervently it believed in its allegations does not affect the objective strength of that party's litigating position").

7

As to the scope of the objective evidence, a petitioner "must point to evidence of a causal relationship between the administration of the vaccine and [his] injuries in order to establish that a reasonable basis for the claim existed when the petition was filed." Cottingham, 971 F.3d at 1346. As noted previously, the Secretary faults Mr. Hohenstein for not presenting a scintilla of evidence on causation. Resp't's Resp. at 12. The Secretary also maintained that to satisfy reasonable basis, a petitioner needs evidence on each Althen prong. Oral Arg. Tr. at 216. While the Secretary is encouraged to develop these arguments in any future briefs, the Secretary's points are well-founded.

In responding to the Federal Circuits's remand order in Cottingham VII, the undersigned held that the way a petitioner could satisfy the Federal Circuit's requirement to point to evidence of causation was to use the Althen structure. For prong two, which requires "a logical sequence of cause and effect showing that the vaccination was the reason for the injury," 418 F.3d at 1278, a petitioner would need a statement from a treating doctor or a report from a retained expert. Cottingham VIII, 2021 WL 347020, at *18-19 (Fed. Cl. Spec. Mstr. Jan. 7, 2021). But, the very next day, the Federal Circuit opinion in James-Cornelius stated "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." 984 F.3d at 1379. This precedential opinion led to a remand from the Court of Federal Claims. Cottingham IX, 154 Fed. Cl. 790 (2021). In the ensuing remand, the undersigned again employed Althen's structure but not the burden of proof. Cottingham X, No. 15-1291V, 2021 WL 6881248 (Fed. Cl. Sept. 27, 2021). On a motion for review, the Court of Federal Claims held that looking at causation through the Althen structure was not an error. Cottingham XI, 159 Fed. Cl. 328, 334-35 (2022). This outcome in Cottingham, a finding of no reasonable basis, is pending appeal. Citing Cottingham XI, the undersigned also examined reasonable basis by using the Althen structure but not the burden of proof. Sheller v. Sec'y of Health and Hum. Servs., No. 18-696V, 2022 WL 4075946, at *8 (Fed. Cl. Spec. Mstr. Aug. 15, 2022). The Court of Federal Claims again found no error. 164 Fed. Cl. 398 (2023). Sheller is also pending appeal.

Until the Federal Circuit speaks definitively, whether the Althen structure should be followed in assessing reasonable basis remains open. On the other hand, it would seem that the components of causation are the same for entitlement and for reasonable basis. The only difference is the burdens of proof are not the same.

Under the Althen rubric, Mr. Hohenstein has not presented a sufficient quantum or quality of evidence to qualify for reasonable basis. For Althen prong one, which requires "a medical theory causally connecting the vaccination and the

8

injury," 418 F.3d at 1278, Mr. Hohenstein has not presented any medical articles. Mr. Hohenstein has not identified any treating doctor who suggested the flu vaccine can cause CIDP. Mr. Hohenstein has not presented the report from a retained expert. These factors suggest that Mr. Hohenstein's evidence on Althen prong one falls short of the reasonable basis standard. See Hoffman v. Sec'y of Health & Hum. Servs., No. 16-1122V, 2023 WL 3092668, at *21-22 (Fed. Cl. Spec. Mstr. Mar. 29, 2023) (finding an expert report did not support a finding of causation when the expert was "uninformed about the onset and symptoms" associated with the disease a vaccine allegedly caused).

By a heterodox understanding of the term "evidence," "evidence" might be stretched to include the outcome in other cases. See Sheller, 2022 WL 4075946, at *7. If so, then Mr. Hohenstein could point to the history of petitioners alleging flu vaccines caused their CIDP receiving compensation either after a special master's ruling or by a stipulation. Cases like Daily, Glassberg, and Goza might make up for the lack of traditional evidence regarding a theory causally connecting the flu vaccine and CIDP.

Even if Mr. Hohenstein could be found to meet his lower burden on Althen prong one, Althen prong two remains an obstacle. The second prong of Althen is about the petitioner. Piscopo v. Sec'y of Health & Hum. Servs., 66 Fed. Cl. 49, 54 (2005) (discussing general causation and specific causation). Here, again, neither a statement from a treating doctor nor a report from an expert connects the flu vaccine with Mr. Hohenstein's CIDP. While James-Cornelius stated that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis," 984 F.3d at 1379, the Federal Circuit did not explain how a petitioner could satisfy reasonable basis for Althen prong two with evidence other than a report from a treating doctor or a report from a retained expert. A clarification from the Federal Circuit on how to solve the prong two conundrum would be helpful. See Sheller, 2022 WL 4075946, at *14-16.

With respect to the causation aspect of reasonable basis, the holding of an onset hearing is not dispositive. Cf. Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc., 946 F.3d 1367 (Fed. Cir. 2020) (indicating that a district court's denial of summary judgment did not preclude the district court from finding the case "exceptional" and awarding attorneys' fees). The ruling regarding onset is only one step to determining causation. To establish reasonable basis, "[t]emporal proximity is necessary, but not sufficient." Chuisano v. United States, 116 Fed. Cl. 276, 287 (2014) (holding that the special master did not err in finding no reasonable basis). As the Federal Circuit has held, establishing reasonable basis requires objective evidence. Cottingham, 971 F.3d at 1346. Here, more than a

scintilla of objective evidence supporting did not exist before, during, and after the hearing. The fact that a hearing was held did not necessarily mean that there was reasonable basis at that time. The hearing was conducted merely to resolve a fact question at that point. Since there was insufficient objective evidence of causation at the time of the hearing, there was no reasonable basis at that time.

In light of the law, the parties' arguments, and the evidence, the undersigned finds Mr. Hohenstein did not meet his burden for showing "a reasonable basis for "the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e). This determination of reasonable basis does not take into account the actions of Mr. Sadaka. See James-Cornelius, 984 F.3d at 1381 (finding that the special master misapplied the reasonable basis standard "[b]y going beyond the allegations and evidence in the petition, and instead looking to counsel's conduct and state of mind").

Mr. Sadaka has zealously and competently represented Mr. Hohenstein. The choice in September 2020 to develop additional evidence regarding onset and to resolve through formal fact-finding when Mr. Hohenstein's numbness began was reasonable. As argued, if Mr. Hohenstein's testimony and Dr. Kwan's medical record had been credited, then Mr. Hohenstein's case might have settled.

The situation in which evidence regarding onset is (a) inconsistent and (b) potentially decisive about entitlement arises from time to time. The outcome, naturally, depends upon the evidence. Sometimes, special masters find an onset that supports a petitioner's claim. Sometimes, special masters do not. See, e.g., Furniss v. Sec'y of Health & Hum. Servs., No. 14-481V, 2015 WL 4722648 (Fed. Cl. Spec. Mstr. July 15, 2015).

This case represents an example of when a special master found the onset occurred too long after the vaccination for the vaccination to have been causative. On behalf of Mr. Hohenstein, Mr. Sadaka argues that because a policy favors awarding attorney's fees to encourage attorney's continued representation of petitioners in the Vaccine Program, he should be compensated. Pet'r's Reply at 8-9, Oral Arg. Tr. at 211-13. This argument extends too far in two respects. First, the policy of compensating attorneys must be understood in the context of the evidentiary requirements that make unsuccessful petitioners eligible for an award of attorney's fees and costs. See Cottingham X, 2021 WL 6881248, at *24.

Second, another option was available. Mr. Hohenstein, probably acting through Mr. Sadaka, could have retained an expert even before filing his petition. This expert could have presented an opinion covering all aspects of Mr.

10

Hohenstein's claim. If Mr. Hohenstein had filed a facially adequate report from a qualified expert, then his arguments regarding reasonable basis might have been stronger. But see Murphy v. Sec'y of Health & Hum. Servs., 30 Fed. Cl. 60, 61 (1993) (denying a motion for review when petitioner presented the report from an expert who had assumed a set of facts inconsistent with the facts as found by a special master), aff'd without opinion, 48 F.3d 1236 (Fed. Cir. 1995); Wirtshafter No. 18-1562V, 2021 WL 1906258, at *8 (Fed. Cl. Spec. Mstr. Apr. 16, 2021) (discussing Murphy), mot. for rev. granted, 155 Fed. Cl. 665, 673 (2021).

Whether this option or another option would have ultimately advanced Mr. Hohenstein's claim for compensation more effectively is difficult to assess. More importantly, a hypothetical or assumed case should not be assessed because an evaluation of reasonable basis is based upon "objective" factors. Simmons, 876 F.3d at 635. For the reasons explained above, the objective factors, considered as a whole, do not rise to a level warranting a finding of reasonable basis. Thus, Mr. Hohenstein's motion is denied.

**Tentative Finding regarding an Amount of Attorney's Fees and Costs**

This decision has pointed out various uncertainties about the meaning of reasonable basis and how a petitioner might demonstrate reasonable basis. The Cottingham and Sheller appeals may result in precedential opinions clarifying these issues. Thus, appellate review of this decision is, at least, possible.

To avoid a possible remand to determine a reasonable amount of attorney's fees and costs, a tentative finding is made. Mr. Hohenstein requests $60,718.20 in attorney's fees and costs. Pet. at 4. This amount is comprised of $58,249.63 in attorney's fees and $2,468.57 in costs. The Secretary presented no opinion about the reasonableness of the request. Resp't's Resp. at 14 n. 6.

The requested fees are reasonable. As to costs, one charge of $1,680.60 was included erroneously. Oral Arg. Tr. at 214-15. A reasonable amount for costs, therefore, is $787.97. A total amount of reasonable attorney's fees and costs would be $59,037.60 if reasonable basis were found.[6]

---

[6] After Mr. Hohenstein requested attorney's fees and costs in his February 14, 2023 motion, he has incurred additional fees and costs. Relevant activities include writing the reply, preparing for and attending the oral argument on June 20, 2023. For this work, Mr. Hohenstein could submit a supplemental motion.

## IV. Conclusion

Mr. Hohenstein has not presented sufficient evidence to show he possessed a reasonable basis to assert the flu vaccine caused his CIDP. Without establishing reasonable basis, Mr. Hohenstein is not eligible for an award of attorney's fees and costs. Therefore, his motion is denied.

The Clerk's Office is instructed to enter judgment in accordance with this decision unless a motion for review is filed. Information about filing a motion for review, including the deadline, can be found in the Vaccine Rules, available through the Court's website.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master