# In the United States Court of Federal Claims

| | |
|---|---|
| **THOMAS HOHENSTEIN,**<br><br>*Petitioner,*<br><br>v.<br><br>**SECRETARY OF HEALTH AND HUMAN SERVICES,**<br><br>*Respondent.* | No. 19-1222<br>(Filed Under Seal: December 21, 2023)<br>(Reissued Publicly: January 9, 2024)<br><br>Not for Publication |

*Mark Theodore Sadaka*, Law Offices of Sadaka Associates, LLC, Englewood, N.J., for Plaintiff.

*Tyler King*, Trial Attorney, *Darryl R. Wishard*, Assistant Director, *Heather L. Pearlman*, Deputy Director, *C. Salvatore D'Alessio*, Director, Torts Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION AND ORDER[1]

**HADJI,** *Judge*.

      Petitioner, Thomas Hohenstein, seeks review of a decision by Special Master Christian J. Moran denying Petitioner's Motion for Attorneys' Fees and Costs. *See Hohenstein v. Sec'y of Health & Hum. Servs.*, No. 19-1222V, 2023 WL 5430741 (Fed. Cl. Spec. Mstr. July 28, 2023) (ECF 143) (the Fee Decision). Petitioner alleges that the Special Master impermissibly elevated Petitioner's burden for establishing an award for attorneys' fees and costs and erred in finding there was no evidence of causation. Mot. for Review at 1 (ECF 148). He further argues that public policy supports the award of attorneys' fees and costs in this case. *Id.* For the reasons stated below, Petitioner's Motion for Review is **DENIED**, and the Special Master's Fee Decision is **SUSTAINED**.

---

[1] This Opinion was issued under seal on December 21, 2023. The parties were directed to propose redactions by January 4, 2024. No proposed redactions were received. The Court hereby publicly releases the Opinion and Order in full.

## BACKGROUND[2]

On November 3, 2016, Petitioner received an influenza vaccination during a routine physical exam with his primary care provider, Dr. Donald Tsay. Exhibit (Ex.) 4 at 12-19 (ECF 9). He was fifty-four years old at the time. *Id.* at 12.

Petitioner alleged that approximately three to four weeks after vaccination, he began to experience symptoms of numbness, weakness, and tingling. Amended Petition (Am. Pet.) ¶ 3-4 (ECF 94). Via affidavits and testimony, Petitioner alleged facts that placed the onset of his symptoms in late 2016. For example, according to testimony from Petitioner and his wife, Petitioner was unable to participate in a favorite hobby, deer hunting, in November 2016 because he was not comfortable climbing. Finding of Fact at 2 (ECF 124). Former colleagues averred that Petitioner also began having trouble performing his job in December 2016. Ex. 11 ¶ 5 (ECF 50); Ex. 13 ¶ 5 (ECF 53).

Seven months after receiving the flu vaccine, in late June 2017, Petitioner again saw Dr. Tsay. Ex. 4 at 6 (ECF 9). The record created from that appointment memorialized Dr. Tsay's observation that Petitioner "presents with tingling and numbness of fingers and toes for 2 months. [N]o weakness." *Id.* Dr. Tsay diagnosed Petitioner with paresthesia of skin and ordered blood work. *Id.* at 8-9.

In late August 2017, Petitioner saw a neurologist, Dr. Dover. Ex. 1 at 6 (ECF 9). Dr. Dover's notes reflect that Petitioner "says 3 months ago he developed some numbness in his feet" and that he reported that his symptoms were worse in cold weather. *Id.* Dr. Dover ordered testing and additional lab work. *Id.* at 7.

On October 30, 2017, Dr. Dover diagnosed Petitioner with chronic inflammatory demyelinating poluneuropathy (CIDP) during a follow-up visit. *Id.* at 2. The Secretary has not contested this diagnosis.

In late January 2018, Petitioner sought a second opinion from another neurologist, Dr. Kwan. Ex. 21 at 70 (ECF 90). Dr. Kwan noted that Petitioner was in good health "until December 2016/January 2017." *Id.* In a second visit in late February 2018, Dr. Kwan confirmed the diagnosis of CIDP. *Id.* at 68.

In his Amended Petition, Petitioner averred that he did not suffer from CIDP or any other serious disabilities prior to receiving the influenza vaccination. Am. Pet. ¶ 12 (ECF 94).

## PROCEDURAL POSTURE

On August 16, 2019, Petitioner filed a claim for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10 *et seq.* (2012) (the

---

[2] As the basic facts have not changed significantly, the Court's recitation of background facts draws largely from the Special Master's October 21, 2022, Finding of Fact (ECF 124) and the Fee Decision (ECF 143).

2

"Vaccine Act"), for an injury he attributed to the influenza vaccine. Pet. at Preamble (ECF 1). Specifically, he alleged that he received two influenza vaccinations in the Fall of 2016 and, shortly thereafter, suffered vaccine-induced CIDP that was either "caused-in-fact" or, in the alternative, significantly aggravated by the vaccinations. *Id.* In support of his petition, Petitioner later filed five exhibits, including medical records and his Social Security Administration Disability File. Ex. 1-5 (ECF 9, 10). On March 10, 2022, Petitioner amended his petition to clarify that he only received one influenza vaccination on November 3, 2016. Am. Pet. at Preamble (ECF 94).

After Petitioner filed his initial medical records, the Secretary contested his entitlement to compensation. Rule 4(c) Report (ECF 32). A status conference was held in which the parties and Special Master discussed Petitioner's failure to present a medical theory to advance his case, the lack of support by Petitioner's treating doctors regarding vaccine causation, and the conflicting medical reports concerning the onset of Petitioner's symptoms. The parties then agreed to address the onset dispute first by further developing the evidentiary record. Sept. 20, 2020 Scheduling Order (ECF 33).

Shortly thereafter, Petitioner submitted additional evidence to include fact witness affidavits, medical records, and employment records. *See* Ex. 8-23 (ECF 48, 49, 50, 53, 56, 61, 70, 71, 79, 83, 84, 90, 97). The Special Master held a hearing, during which Petitioner and other witnesses testified. *See Hohenstein v. Sec'y of Health & Hum. Servs.*, No. 19-1222V, 2023 WL 356713, at *1-2 (Fed. Cl. Spec. Mstr. Jan. 23, 2023) (ECF 130) (the Compensation Decision).

Ten days later, on October 21, 2022, the Special Master issued his Finding of Fact. (ECF 124). Based on the evidence presented, he determined that Petitioner's neurological problems began on May 15, 2017, 193 days after the date of vaccination. *Id.* at 6-7. Although the Special Master offered Petitioner the opportunity to obtain a report from an expert, *id.*, Petitioner instead chose to seek the dismissal of his case. On December 15, 2022, Petitioner moved for a decision dismissing his petition. Mot. to Dismiss (ECF 129). The Special Master dismissed the case with prejudice for insufficient proof. Compensation Decision (ECF 130). Judgment was entered on February 6, 2023. (ECF 132).

Although unsuccessful in his claim for entitlement, Petitioner sought an award for attorneys' fees and costs. Mot. for Att'ys' Fees and Costs (ECF 133). The Secretary objected, arguing that Petitioner lacked a reasonable basis for his claim. Resp. to Mot. for Att'ys' Fees and Costs at 1 (ECF 134). After considering Petitioner's evidence and concluding that Petitioner failed to meet the reasonable basis standard, the Special Master denied Petitioner's request for attorneys' fees and costs on July 28, 2023. Fee Decision (ECF 143). In an attempt to cure a perceived evidentiary deficiency, Petitioner submitted two medical articles on causation and sought reconsideration of the Fee Decision. Mot. for Recons. (ECF 145). The Special Master found that Petitioner had not demonstrated grounds for reaching an alternative result and denied the Motion for Reconsideration. Order Den. Mot. for Recons. (ECF 147).

On August 25, 2023, Petitioner then sought review of the Fee Decision. Mot. for Review (ECF 148).

## STANDARD OF REVIEW

Under the Vaccine Act, this Court may set aside a special master's findings of fact or conclusions of law only if they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa-12(e)(2)(B). The standards set forth in 42 U.S.C. § 300aa-12(e)(2)(B) "vary in application as well as degree of deference" as each "standard applies to a different aspect of the judgment." *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). Findings of fact receive deferential review under the "arbitrary and capricious" standard; legal conclusions are reviewed under the "not in accordance with law" standard; and discretionary rulings are reviewed for "abuse of discretion." *Id.*

## DISCUSSION

Petitioner raises three primary objections to the Special Master's Fee Decision. First, he argues that the Special Master impermissibly applied a heightened legal standard for the award of attorneys' fees and costs. Mot. for Review at 1 (ECF 148). Second, he argues that the Special Master erred in finding no evidence of causation under *Althen* prong 2. *Id.* Finally, Petitioner maintains that public policy supports the award of attorneys' fees and costs in this case. *Id.*

In a vaccine case, an award of attorney fees and costs is not dependent on the success of the underlying entitlement claim. Instead, "[w]hen a petitioner is denied compensation for a claim, she may still obtain compensation to cover reasonable attorneys' fees and other costs 'if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.'" *James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) (quoting 42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360-61 (Fed. Cir. 2012)). But even when these two requirements are met, the decision to grant or deny a request for attorneys' fees and costs is a matter of discretion. *Id.* (stating that "a special master retains discretion to grant or deny attorneys' fees"). In this case, the parties do not dispute Petitioner's good faith in filing the petition. As such, Petitioner's entitlement to attorneys' fees and costs hinges on whether he met his burden in establishing a reasonable basis for the claim.

"Reasonable basis" is not defined in the Vaccine Act or Program rules but is understood to be an objective standard determined by the totality of the circumstances. *Chuisano v United States*, 116 Fed. Cl. 276, 286 (Fed. Cl. 2014); *see also Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (finding "no reasoned basis for abandoning the Claims Court's objective, totality of the circumstances inquiry").

4

As an objective test, it is satisfied through objective evidence. *Cottingham*, 971 F.3d at 1344 (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). The quantum of objective evidence needed to establish reasonable basis for a claim is "lower than the preponderant evidence standard required to prove entitlement to compensation," but "more than a mere scintilla." *Id.* at 1346.

Non-exhaustive factors that the Court may consider include the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation. *Amankwaa v. Sec'y of Health & Hum. Servs.,* 138 Fed. Cl. 282, 289 (2018). Accordingly, medical records, affidavits, and sworn testimony all constitute objective evidence that could support reasonable basis. *See James-Cornelius,* 984 F.3d at 1379-81. Failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion. *Cottingham,* 971 F.3d at 1345.

### I. The Special Master Did Not Commit Legal Error by Using the *Althen* Prongs to Structure His Analysis

Petitioner argues that the Special Master conducted an improper analysis when evaluating his claim for reasonable basis, resulting in a heightened legal standard for the award of attorneys' fees and costs. Not only does he maintain that the Special Master's use of the *Althen* prongs—a three-part test for causation governing entitlement to compensation for off-table injuries—was in error,[3] but he also maintains that, in direct contradiction with the Federal Circuit's ruling in *James-Cornelius*, the Special Master impermissibly requires petitioners to submit a statement from a treating provider or an expert report to overcome *Althen* Prong 2. Mot. for Review at 10-11 (ECF 148).

The Court disagrees. In *Cottingham*, this Court previously explained that, in the context of vaccine injury, "causation is defined by the *Althen* prongs" and "[b]y extension, the *Althen* prongs may provide at least some definitional context to causation in a reasonable basis analysis." *Cottingham v. Sec'y of Health & Hum. Servs.*, 159 Fed. Cl. 328, 334-35 (2022), *aff'd per curiam*, No. 22-1737 (Fed. Cir. Nov. 14, 2023). In other words, although the *Althen* test may not be used in place of the totality of the circumstances test, it may be used as a framework to aid the Special Master's analysis of the totality of the circumstances.

That is not to say that lack of evidence for one of the *Althen* prongs automatically ends a reasonable basis inquiry. Because the totality of the circumstances test requires the

---

[3] Petitioner does not explicitly raise an objection to the Special Master's use of the *Althen* structure in his Motion for Review (ECF 148) as he did in his Motion for Reconsideration (ECF 145). However, the Court interprets his complaints regarding the "heightened legal standard" and the perceived creation of a "separate litigation" as an objection to the Special Master's *Althen* analysis. *See* Mot. for Review at 2 (ECF 148) ("The Special Master's stated reason for denying fees and costs appear focused on a lack of evidence in the record for *Althen* prong 2. However, as discussed below, even if this was the correct analysis, and it was not, there was more than a mere scintilla of evidence to support *Althen* prong 2.")

5

fact finder to weigh all the objective evidence, a lack of evidence in one prong can cut against recovery but is not necessarily dispositive. *See Crawford v. Dep't of the Army*, 718 F.3d 1361, 1366-67 (Fed. Cir. 2013) ("As with any test that considers the totality of the circumstances, certain factors cannot be singled out as dispositive without first weighing all of the other potentially competing factors."); *see James-Cornelius,* 984 F.3d at 1379, 1381 (holding that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable basis" and remanding for the Special Master to weigh all the evidence on record).

In this case, as in *Cottingham*, the Special Master made use of the *Althen* prongs to structure his analysis, while simultaneously recognizing that the burdens of proof differ for entitlement and reasonable basis purposes. Fee Decision at 8-9 (ECF 143). He then weighed the evidence and ultimately concluded that "the objective factors, *considered as a whole*, do not rise to a level warranting a finding of reasonable basis." *Id.* at 11 (emphasis added). Such a finding comports with the totality of the circumstances test, as such a test requires a weighing of all competing factors. *See Crawford*, 718 F.3d at 1366-67 (noting that, for the totality of the circumstances test, the impact of one factor must be considered within the context of all other factors).

It is true that the Special Master did not explicitly reference the totality of the circumstances test. "This silence, however, should not be taken either as an endorsement or rejection of a 'totality of the circumstances' test." *Cottingham*, 971 F.3d at 1346 (cautioning that the lack of reference to the "totality of the circumstances" test in [one case] should not be construed as an endorsement or rejection). Although the Court acknowledges that it would have been better for the Special Master to explicitly cite the test, the omission does not rise to the level of reversible error. Indeed, the Court finds the omission did not impact his analysis given that the Special Master nonetheless "*considered as a whole*" the objective factors. Fee Decision at 11 (ECF 143) (emphasis added).

Accordingly, using the *Althen* prongs in this context—within a wider analysis of the totality of the circumstances—was not inappropriate, and the Special Master did not err by using the *Althen* prongs as the structure within which to evaluate the objective evidence presented by Petitioner for the causation element of his claim. *See Cottingham,* 159 Fed. Cl. 328, *aff'd per curiam*, No. 22-1737 (Fed. Cir. Nov. 14, 2023).

With respect to the question of whether the Special Master impermissibly required Petitioner to submit an express medical opinion in order to satisfy *Althen* Prong 2 and thus succeed on his claim for attorneys' fees and costs, the Court finds that he did not.

In *James-Cornelius*, the Federal Circuit held that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable basis." 984 F.3d at 1379. While the Special Master in this case did emphasize the lack of a statement from a treating doctor or a report from an expert, he specifically cited the Federal Circuit's holding in *James-Cornelius*, demonstrating his awareness of applicable precedent. Fee Decision at 9 (ECF 143).

6

Moreover, although he noted that "the Federal Circuit did not explain how a petitioner could satisfy reasonable basis for *Althen* Prong 2 with evidence other than a report from a treating doctor or a report from a retained expert," *id.*, at no point did he state that the use of such evidence was required. Instead, he specifically left open the possibility that evidence from other sources could satisfy *Althen* Prong 2. Indeed, in addressing Petitioner's lack of an expert report, he noted, "[w]hether this option [an expert report] *or another option* would have ultimately advanced [Petitioner]'s claim for compensation more effectively is difficult to assess." *Id.* at 11 (emphasis added). By referencing the possibility of other options, the Special Master made clear that Petitioner's failure to submit an expert report was not fatal to his claim. Instead, the Special Master simply found that the lack of certain types of evidence, including an expert report, merely served as "points support[ing] the Secretary's assertion that [Petitioner] 'did not file more than a scintilla of objective evidence in support of causation.'" *Id.* at 6.

## II. The Special Master's Decision was not Arbitrary, Capricious, or an Abuse of Discretion

Next, Petitioner argues that the Special Master erred in finding no evidence of causation under *Althen* prong 2. Mot. for Review at 1 (ECF 148). Based on his evaluation of the objective evidence presented in this case, the Special Master concluded that Petitioner lacked a reasonable basis for his claim. Fee Decision at 12 (ECF 143). It is well settled that an evaluation of "the weight of the objective evidence in the record [and] whether that evidence establishes reasonable basis … are factual findings for the Special Master." *Cottingham,* 971 F.3d at 1347. "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines ex rel. Sevier v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991).

In the instant case, Petitioner effectively asks the Court to reweigh the evidence and find that a reasonable basis existed to bring the claim. He maintains that a fair examination of the objective factors in his case reveals more than a scintilla of evidence necessary to support a finding that there was reasonable basis to bring Petitioner's claim. Mot. for Review at 11-13 (ECF 148). Specifically, he cites six objective factors in support of reasonable basis, to include: (1) a timely petition; (2) a covered vaccine; (3) his CIDP diagnosis; (4) history of compensation to others for CIDP caused by the flu vaccine; (5) evidence of onset within thirty days; and (6) no evidence of pre-existing CIDP. *Id.* at 12-13. As support, he points to medical records, his Social Security Disability application and business records, witness affidavits, and the actions of the Special Master in conducting a fact hearing. *Id.* at 13.

But it is not for this Court to "reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the

fact finder." *Porter v. Sec'y of Health & Human Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011).

Here, the Special Master evaluated the objective evidence before him, noting what was—and what was not—before him. His recitation of facts confirms his awareness of several of the undisputed objective factors referenced by Petitioner, including his timely petition, his receipt of a covered vaccine, and his CIDP diagnosis. Fee Decision at 2 (ECF 143). He noted the existence of medical records that placed Petitioner's onset firmly in 2017, and then went on to describe evidence from Dr. Kwan and affiants who attested to the onset of Petitioner's symptoms within two months of Petitioner's flu vaccine. *Id.* at 2, 5-6. He recognized that the Secretary has previously compensated individuals for CIDP following their influenza vaccines. *Id.* at 7. The Special Master also noted the lack of causation evidence from treating doctors, lack of an expert report, and lack of medical articles examining a potential link between the flu vaccine and CIDP. *Id.* at 6.

This review demonstrates that the Special Master considered the factual basis, the medical and scientific support (or lack thereof), and the novelty of the theory of causation. Although he may not have specifically addressed each of the objective factors referenced in Petitioner's Motion for Review in the course of his causation analysis, his decision did consider the totality of the circumstances. Ultimately, after reviewing the evidence before him, he decided that the evidence of causation was not enough and concluded that Petitioner failed to present "a sufficient quantum or quality of evidence to qualify for reasonable basis." *Id.* at 8.

Given the Special Master's finding of insufficient evidence, the Court recognizes that this case differs from cases in which special masters clearly erred by finding "no evidence" of causation despite *some* evidence on record. *See Cottingham,* 971 F.3d at 1347 ("no evidence" of causation found despite medical records and a Gardisil package insert providing support for causation). This case also differs from those in which special masters outright refused to consider relevant evidence when conducting their reasonable basis analysis. *See James-Cornelius,* 984 F.3d at 1379 (special master improperly rejected affidavits on ground they could never constitute objective evidence).

In this case, at no point did the Special Master refuse to consider any objective evidence, nor did he reach an ultimate finding of "no evidence" of causation. While a special master is required to consider all relevant evidence, there is no requirement that he afford it the weight demanded by a petitioner. *See Cottingham,* 971 F.3d at 1347 ("[T]he weight of the objective evidence … [is a] factual finding[] for the Special Master."). In fact, in the Motion for Review, Petitioner seemingly concedes he did not submit key evidence of causation. At one point, he maintains:

> The Respondent wants to play gotcha in that evidence of causation for CIDP flu vaccine is plentiful and case law, especially my cases as argued at oral argument, is evidence toward this *missing causation*. However, *at no point during the*

8

> *[procedure] was evidence of causation required and to submit such evidence without reason would be to do so just for fees* running afoul of *Goodgame*.

Mot. for Review at 10, n.1 (ECF 148) (emphasis added). Similarly, in Petitioner's Motion for Reconsideration, he noted:

> Importantly, in this case, influenza caused CIDP, providing the evidence requested *would have been* readily available. *See, e.g.*, Ex. 24 and 25. However, *there was no time* during the pendency of the Hohenstein onset issue *that required medical literature on causation*.

Mot. for Recons. at 2 (ECF 145) (emphasis added). In short, Petitioner's statements indicate even Petitioner recognized that his evidence on causation was lacking when his request for attorneys' fees and costs was before the Special Master. Based on the above, affording deference to the Special Master's findings, the Court finds that the Special Master appropriately considered the evidence and reached a rational conclusion.

### III. Public Policy Considerations Do Not Override the Evidentiary Burden

Petitioner next advances a public policy argument. He argues that the Vaccine Act is designed to incentivize attorneys to represent clients in the Vaccine Injury Compensation Program, and allowing the Fee Decision to stand will have a chilling effect on counsel taking potentially meritorious cases. He further maintains that the natural consequence will be counsel filing medical literature and expert reports solely to aid the collection of fees. Mot. for Review at 15 (ECF 148).

The Court recognizes that the policy of the Vaccine Act is to encourage petitioners to file petitions and obtain qualified counsel to assist them. *See Sebelius v. Cloer*, 569 U.S. 369, 380 (2013) (noting that the stated purpose of the Vaccine Act's fee provision is to assist a petitioner's ability to obtain qualified assistance by making fees awards available for non-prevailing, good-faith claims) (citation omitted).

However, this policy consideration does not supersede the evidentiary standard nor override the requirement that petitioners establish a reasonable basis for their claims. As discussed *supra*, reasonable basis is established with objective evidence, as weighed by the fact finder. If an unsuccessful petitioner fails to meet his burden in establishing reasonable basis, he is not eligible for an award of attorneys' fees and costs, notwithstanding the policy of the statute.

### CONCLUSION

In this case, the Special Master applied the appropriate standard, carefully weighed "the objective factors, considered as a whole," and rationally concluded that Petitioner failed to demonstrate a reasonable basis for his claim. This decision was not arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law. Therefore, the Court **DENIES** Petitioner's Motion for Review (ECF 148) and **SUSTAINS** the Decision of the Special Master. The Clerk of the Court is directed to enter judgment accordingly.

      **IT IS SO ORDERED.**

*/s/ Philip S. Hadji*
PHILIP S. HADJI
Judge